· JOHNSON and others, Respondents, vs. VICKERS, Appellant.

*March 31—April 20, 1909.*

*Assignments: Contracts assignable: Action by assignee: Evidence: Issues: Pleading: General denial: Defects in pleading: Waiver: Demurrer: Estoppel.*

1. A contract with individual subscribers inexperienced in the business, for the erection and equipping of a canning factory according to specifications, which requires skill and experience and imposes liability upon the contractor, involves a relation of personal confidence, and is not assignable by the contractor without the consent of the individual subscribers.

2. In an action by the assignees of a contract, a valid assignment of the contract is a necessary allegation of the complaint, is put in issue by a general denial, and, unless such allegation is supported by proof, the assignee cannot recover.

3. In an action by the assignees of a contract, failure to plead a valid assignment is failure to state a cause of action, and such defect is not waived by failure to demur.

4. In the absence of· evidence which would establish consent, ratification, or estoppel, the assignees of a nonassignable contract cannot recover from the other party.

APPEAL from a judgment of the circuit court for Barron county: A. J. VINJE, Circuit Judge. *Reversed.*

The action was brought to recover a sum alleged to be due on a subscription contract. At the close of the testimony the court directed a verdict in plaintiff's favor, and from a judgment entered on such verdict this appeal is taken.

During the fall of 1906 certain parties circulated four subscription papers, alike in tenor and effect, which by their terms would constitute a single contract when completed. The purpose was to secure subscriptions to the amount of $14,000 to build a canning factory at Chetek, Wisconsin. The Industrial Construction Company, a Chicago corporation, was the first party to the proposed agreement, and the subscribers were to become the second parties. The first party agreed to erect and equip the canning factory, accord-.

ing to specifications attached to the proposed contract, for $14,000. No subscriber was required to pay until the factory was completed, and the contract was to have no force or effect until $14,000 was subscribed. After the requisite subscriptions were obtained the second parties agreed to appoint an executive committee of three with full power to represent them in all their interests, and to inspect the work, materials, and machinery from time to time as the factory was being built and equipped. All subscriptions were to become payable when the factory was completed, but in certain cases it was provided that notes might be given. After the factory was in operation it was agreed that the second parties should form a corporation, each subscriber to receive stock to the amount of his subscription. The specifications for the building to be erected and the kind and character of the machinery to be furnished appear to be quite complete as to details, and such specifications were made a part of the contract. The contract bears date December 4, 1906, and the list of names attached thereto shows subscriptions to the amount of $14,000.

A meeting of the subscribers was called for December 6th at Chetek by mailing postal cards on the 4th and 5th of the month. The subscribers to the number of 175 were scattered throughout Barron county. The defendant was a subscriber to the amount of $100. He did not receive notice of the meeting until after it had been held. Some fifty or sixty subscribers, less than a majority, were present. At this meeting an executive committee was appointed. On December 8th the Industrial Construction Company assigned the contract in question, without recourse, to *Rasmus Johnson, Christ Johnson,* and *T. H. Pardoe,* the plaintiffs in this action. The assignees proceeded to erect the factory. Several meetings of the subscribers appear to have been held from time to time, none of which defendant attended except a meeting held on March 2, 1907, at which time a vote was taken on

the proposition of accepting the factory, and upon which proposition defendant claims to have voted in the negative. The subscribers were not advised of the alleged assignment of the contract to the plaintiffs before it is claimed that the job was accepted by the executive committee. It is conceded that the plant was not completed in some particulars on March 7th. The building had not been painted and cement floors had not been put in the boiler and engine room, and some other things remained to be done. The executive committee reported that the painting was not done and the cement floor was not put in by March 7th because it requested that this work be postponed until warm weather, and that it had made arrangements for doing the work at the proper time; and further, that it had consented to some slight modifications in the contract, and that the same was completed by March 7th, except as to painting and cement work, which had been arranged for. Defendant declined to pay his subscription, and on the following grounds defended an action brought to recover the same: (1) The contract was not assignable. (2) The factory was not completed when accepted. (3) The requisite $14,000 had not been subscribed.

Failure to sustain these defenses is alleged as error, and error in rulings on evidence is also assigned.

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

For the respondents there was a brief by *A. J. Sutherland* and *J. W. Soderberg,* and oral argument by *Mr. Sutherland.*

BARNES, J. The disposition of this appeal necessitates the consideration of the following questions: (1) Was the contract sued on assignable? (2) Was the question of its nonassignability raised by the pleadings? (3) Was the defendant precluded from insisting upon the defense of nonassignability?

1. It is established that the Industrial Construction Com-

pany attempted to make an absolute assignment of its contract two days after its execution and before any work was done thereunder. The assignment is unqualified in its terms and is made without recourse, and the plaintiffs are suing as assignees claiming to have performed the work and furnished the materials used in the construction of the factory by virtue of the assignment and not as subcontractors. This contract obligated the Industrial Construction Company to build and equip a canning factory according to specifications attached to the contract that seem to be complete as to details. The performance of the work undoubtedly required skill and experience, and upon its proper execution the success of the enterprise might well depend. The assignees were wholly inexperienced in constructing plants of this character, while the assignor apparently followed the business of so doing. This contract manifestly imposed a liability upon the assignor of the plaintiffs, and involved a relation of personal confidence which the subscribers must have intended would be exercised by the party in whom they confided. In the construction of a complex plant, subscribers having no knowledge themselves as to how such a plant should be constructed would naturally prefer to make their contract with a party having the requisite knowledge and experience rather than with persons having neither. Good business judgment would dictate that such a course should be pursued. They had the right to select the party with whom they would deal, and, when the selection was made and the contract was executed, there could be no substitution of contractors in the case before us without the assent of the subscribers. The authorities are quite uniform in holding that such a contract is not assignable by the contractor without the consent of the other party thereto. *Ark. Valley S. Co. v. Belden M. Co.* 127 U. S. 379, 387, 8 Sup. Ct. 1308; *Boston Ice Co. v. Potter,* 123 Mass. 28; *Swarts v. Narragansett E. L. Co.* 26 R. I. 388, 59 Atl. 77; *Campbell v. Sumner Co.* 64 Kan. 376, 67 Pac. 866; *Edison*

*v. Babka,* 111 Mich. 235, 69 N. W. 499; *Winchester v. Davis P. Co.* 67 Fed. 45; *Worden v. C. & N. W. R. Co.* 82 Iowa, 735, 48 N. W. 71; *Craig v. Miller,* 6 Ky. 440; 4 Cyc. 22, 23.

2. It is urged that the question of assignment is not before the court because it is not put in issue by the pleadings. The complaint alleged the assignment of the contract sued upon. This was a necessary allegation because the plaintiffs depended on such assignment for their right to recover. The answer put this allegation in issue by a general denial. Since the plaintiffs relied upon the fact of assignment to prove any cause of action at all, the general denial put the averment of assignment in issue.

"The general rule under the Code is that any matter of fact alleged in the complaint which the plaintiff must establish to make out his cause of action may be disproved under a general denial." *Hilliard v. Wis. L. Ins. Co.* 137 Wis. 208, 117 N. W. 999, 1000, and cases cited.

It was incumbent upon the plaintiffs to prove a valid assignment in order to show that they had a cause of action, unless the assignment was admitted, which it was not. Their proof failed to show that they had a cause of action, because no valid assignment was shown. If it be claimed that the complaint itself failed to show a valid assignment and therefore did not state a cause of action, such defect is not waived by failure to demur. Sec. 2654, Stats. (1898).

3. No facts were shown which would establish a ratification of the assignment by the defendant or an estoppel which would preclude him from denying liability. The defendant did not know that the contract had been assigned until after the plaintiffs claimed that the work had been completed and had secured a certificate from the executive committee to that effect. Neither did the other subscribers generally know of such assignment, and what evidence there is on the subject tends to show that even the executive committee did not know

of the assignment until the certificate to the effect that the contract had been completed was given. Were this otherwise, the result would not be different. The authority given by the contract to the committee was not broad enough to empower it to make a substitution of parties thereto. Its powers do not seem to have been enlarged by the subscribers at any of the meetings held. It might be an interesting question whether such power could be conferred except by all parties in interest, but there does not appear to have been any attempt to confer it. Indeed, the right of the executive committee to act at all is, to say the least, doubtful. It was chosen by a minority of the shareholders at a meeting called under such circumstances that many of the subscribers were debarred from attending it by reason of the short time that elapsed between the date of the meeting and the mailing of the notice announcing it. The question, however, is not material to a disposition of the appeal.

It is unnecessary to consider other errors discussed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to set aside the order directing a verdict in plaintiffs' favor, and to grant the defendant's motion for a directed verdict in his favor, and for judgment dismissing the complaint.