## CUNNINGHAM v. BUEL et al.   (No. 7612.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 20, 1926.)

**1. Parties ⬅76(2) — Objection to authority and capacity of substituted parties to sue must be raised by verified pleadings and prayer to abate suit, where substituted parties showed right to sue in first pleadings (Rev. St. 1925, art. 2010).**

Where authority and capacity by which substituted parties came into case were fully shown in their first pleadings, due and orderly procedure required objection to authority of such parties to sue under certain names to be raised by verified pleadings and by prayer to abate suit as to substituted parties, in view of Rev. St. 1925, art. 2010.

**2. Parties ⬅76(1).**

Defendant, failing to question capacity of substituted parties to sue at time when orderly procedure required him to do so, waives right to raise such objection.

**3. Names ⬅14—Executors of estates of Thomas Jefferson Daniel and Mason P. Buel held entitled to sue on notes owned by T. J. Daniel and M. P. Buel, in absence of evidence raising issue of identity.**

Objection to right of executors of estates of Mason P. Buel and Thomas Jefferson Daniel to sue on notes owned by M. P. Buel and T. J. Daniel cannot be sustained under findings permitting executors to be substituted as parties and by presumption that parties were the same, and hence recovery under either name was authorized, in absence of evidence raising issue of identity.

**4. Mortgages ⬅48(1).**

Trivial discrepancies in description of land does not render description insufficient in mortgage foreclosure.

**5. Bills and notes ⬅299—Indorser of note, waiving demand, protest, and notice, and guaranteeing payment at maturity, cannot complain of lack of diligence by holder in failing to bring suit at first or second term of court.**

Indorser of note, guaranteeing payment on maturity, and waiving demand, protest, and notice, waived right to require holder to use diligence required in ordinary cases to hold an indorser, and was relegated to position of maker, who cannot complain of lack of diligence in failing to bring action on note at first or second term of court after note matured.

**6. Appeal and error ⬅742(4).**

Appellant's proposition of law, objecting to introduction of evidence predicated on assignment of error in which no such objection was raised, must be overruled.

**7. Mortgages ⬅461.**

In action to foreclose mortgage, notes sued on were admissible without reference to question of tender to mortgagor of amount paid by him in purchasing land on foreclosure of prior mortgage.

**8. Covenants ⬅64, 79(1)—Warranty to hold grantee harmless from sums due on mortgage notes, and from taxes and water charges, is covenant running with land, enforceable by subsequent purchaser from grantee, though his immediate grantor made special warranty on same matter.**

Warranty to hold grantee harmless from sums due on mortgage notes, and from taxes and water charges, is a covenant running with land, which inures to subsequent purchaser from grantee, unaffected by grantee's special warranty affirming such agreement, and on foreclosure of notes covered by warranty last purchaser may recover purchase price of land, improvements, and taxes from first vendor and warrantor.

**9. Appeal and error ⬅1056(6).**

Assignment of error to exclusion of testimony will be overruled, where, if testimony was admitted, it could not have affected any controverted issue in case.

**10. Judgment ⬅219.**

Where no separate findings and conclusions were requested or filed, court properly set out findings and conclusions in body of judgment.

**11. Mortgages** ⊕⟶461 — **Admission of notes sued on in mortgage foreclosure without showing that mortgagee was not party to prior foreclosure suit, held not error, where record sufficiently showed such fact.**

In proceedings to foreclose mortgage, mortgagee was properly permitted to introduce notes sued on without first showing that he was not a party to a prior foreclosure suit, where record sufficiently showed such fact.

Error from District Court, Cameron County; A. M. Kent, Judge.

Suit by M. P. Buel and others against A. W. Cunningham and another, in which I. E. Green and another were interpleaded, and defendant Cunningham filed a cross-action. Judgment for plaintiffs, and defendant Cunningham alone brings error. Affirmed.

H. L. Yates, of Brownsville, for plaintiff in error.

Wm. S. West and R. A. Hightower, both of Brownsville, John C. Myrick, of Harlingen, H. L. Faulk, of Brownsville, and Rabel & Hornaday, of Harlingen, for defendants in error.

SMITH, J. The suit has many angles, both of law and of fact. It relates to 66.25 acres of land in Cameron county, and involves distinctive claims of four different sets of litigants, each of whom have filed briefs in which counsel have quite ably presented their respective contentions.

At the inception of the matters involved in this controversy the land was owned by the Freemont Investment Company, a corporation. In October, 1917, the investment company sold the land to B. A. Philpott, retaining the vendor's lien to secure two notes given by Philpott as part of the purchase price.

During the same month Philpott sold the land to I. E. Green, who as a part of the consideration assumed the payment of the two Philpott notes, and executed to Philpott five notes, numbered 1 to 5, secured by the vendor's lien upon the property. On November 9, 1917, Philpott transferred the five Green notes to A. W. Cunningham, indorsing them to the latter without recourse. On January 28, 1918, Cunningham sold and transferred No. 1 of the series of Green notes to A. H. Patton, indorsing it without recourse. Patton still holds this note, which matured October 25, 1918. On March 12, 1918, Cunningham sold the remaining four of said I. E. Green notes, numbered 2 to 5, inclusive, to M. P. Buel, T. J. Daniel, and Ike T. Pryor, said notes maturing on October 25, 1919, 1920, 1921, and 1922, respectively. In this transfer Cunningham guaranteed the payment of said notes 2, 3, 4, and 5. But on April 11, 1919, Buel and his associates re-sold notes numbered 2 and 3 of said series to Cunningham.

So at this juncture the two notes executed by Philpott and payable to the investment company were still held by that company, and were secured by a first lien on the land. And the five notes executed by I. E. Green and payable to Philpott were secured by a junior lien, and were held, the first of the series by A. H. Patton, the next two of the series by Buel, Daniel, and Pryor, and the remaining two by Cunningham, who had guaranteed the payment of the two held by Buel and associates.

On February 20, 1919, while the matter was in this status, the investment company brought suit to recover upon the two Philpott notes and to foreclose the superior lien. The action was brought against only Philpott, the maker of those two notes, and I. E. Green, the then owner of the legal title to the land. The holders of none of the five second lien notes executed by Green were impleaded in that suit, and the interest of none of them was sought to be adjudicated, nor was adjudicated, in the proceeding. The investment company recovered judgment upon the notes and for foreclosure, and at the ensuing sale thereunder Cunningham bought in the land, paying therefor the amount of the judgment and costs, $3,353.14, and received the sheriff's deed thereto. It appears from the record that during the pendency of the above-mentioned suit Cunningham notified Patton and Buel and his associates, holders of three of the five second lien notes of the pendency and purpose of the suit, and asked them to make themselves parties thereto, but they declined to do so. Nor did Cunningham himself intervene, although he held two of said five notes, and had guaranteed payment of two others of the series held by Buel and his associates. And this was the status when Cunningham bought in the land at the foreclosure sale whereby the first lien was extinguished. The judgment was rendered in said suit on June 5, 1920, and the land was sold thereunder on August 3, 1920.

The present suit was instituted on April 26, 1922, by M. P. Buel, T. J. Daniel, and Ike T. Pryor against Cunningham as the legal owner of the land and as guarantor of the two notes held by the plaintiffs, and against A. H. Patton as the owner of one of the series of notes.

On May 31, 1922, a few weeks after this suit was filed, Cunningham sold the east 40 acres of the 66.25 acres in controversy to I. E. Green, the conveyance thereof containing the provision that—

"This deed is executed with the agreement that grantor will hold grantee harmless from any sums of money due on three outstanding notes of $555, each now in suit, and from all taxes, flat rates, and water charges of the

canal district up to December 31, 1921, none of which debts or charges shall, as between grantor and grantee, be a charge against the 40 acres herein conveyed."

The conveyance was by general warranty deed.

And *six months later* Green conveyed the land thus purchased from Cunningham to J. H. Williams, the recited consideration therefor being $2,500 cash, "and the further consideration of the assumption and agreement made and entered into by and between A. W. Cunningham and I. E. Green, bearing date of May 31, A. D. 1922." This conveyance was by special warranty deed, whereby the grantor warranted against all lawful claims "through, by, or under" him.

Accordingly, the plaintiffs below impleaded Green and Williams, and sought foreclosure against them and the other defendants, as well as personal judgment against Cunningham, for the amount of the two notes held by plaintiffs, and the payment of which was guaranteed by Cunningham.

Upon suggestion of the death of plaintiffs M. P. Buel and T. J. Daniel, the executors of their respective estates were substituted as parties plaintiff. The several defendants, except Green, who was dismissed from the suit, filed appropriate answers, asking for affirmative relief. The cause was tried before the court without a jury, and judgment was rendered, first, that Buel, Daniel, and Pryor recover of Cunningham the amount of the two notes held by them, and against all the defendants for foreclosure of the land, and for the sale of that portion owned by Cunningham, and, if necessary, that portion owned by Williams; second, that Patton's lien to secure the note held by him be foreclosed, and the proceeds of the sale prorated between him and the plaintiffs as the holders of notes 4 and 5; third, against Cunningham upon his cross-action, in which he prayed for foreclosure of the two Green notes, Nos. 2 and 3, held by him, and for recovery of the amount paid by him at the prior sale of the land, and that the proceeds of the sale now to be had be apportioned two-fifths to him as the holder of said notes 2 and 3; fourth, that defendant Williams recover of Cunningham the amount he paid to I. J. E. Green for the land, and for the value of improvements he had placed thereon, and for the amount of taxes and water charges he had paid on the land. Cunningham alone has appealed. Briefs are presented here in his behalf, as well as separately in behalf of Buel and his associates, Patton and Williams, respectively. The pleadings of the several defendants below will be set out, where it appears to be necessary in this opinion.

By his first and second propositions plaintiff in error raises the question of the right of the executors of the estate of "Mason P."

Buel to recover upon notes owned by "M. P." Buel, and of the executor of the estate of "Thomas Jefferson" Daniel to recover upon notes owned by T. J. Daniel, without first showing by affirmative evidence that Mason P. Buel and M. P. Buel were identical, and that Thomas Jefferson Daniel and T. J. Daniel were identical. The record shows that in the motion to substitute the representative parties it was alleged that those parties were the representatives of the estates of the deceased plaintiffs, M. P. Buel and T. J. Daniel, and certified copies of the probate proceedings purporting to show them as such were attached to the motion to substitute. The alleged variance in the names was shown in these papers, but plaintiff in error did not raise the question of identity or contest the motion to substitute, nor did he question the capacity of the substituted parties to maintain the suit or their right to recover as such until the probate papers were offered in evidence upon the trial, when he objected to the evidence upon the ground that the identity of "Mason P." Buel and M. P. Buel, and of "Thomas Jefferson" Daniel and T. J. Daniel, had not been established by affirmative evidence.

[1-3] The authority by which the substituted parties came into the case, the capacity in which they appeared, and their apparent right to recover, were fully shown in their first pleadings, and we are of the opinion that due and orderly procedure required the complaining party to raise his objection by verified pleadings, setting out the specific grounds of his objection and by prayer to abate the suit as to the substitute parties. Article 2010, R. S. 1925. By failing to do so plaintiff in error waived his right to question the capacity of those parties. Plaintiff in error's contention is further defeated by the findings of the trial judge by which he permitted the substitution of parties, and by the assumption, in view of the record presented here, that T. J. Daniel and M. P. Buel are prima facie the same persons as Thomas Jefferson Daniel and Mason P. Buel, respectively, and recovery under either name was authorized in this case, in the absence of affirmative evidence raising an issue of identity. Kane v. Sholars, 41 Tex. Civ. App. 154, 90 S. W. 937. Plaintiff in error's first and second propositions are accordingly overruled.

[4] Plaintiff in error's third proposition raises the question of the sufficiency of the description of the land as contained in the transfer from plaintiff in error to Buel and associates, but there is no merit in the proposition. The discrepancy in the description of the land was trivial, and deceived no one.

[5] In his fourth proposition plaintiff in error asserts that, because defendants in error did not bring this action to recover on notes 4 and 5 at the first or second term of

court after the notes matured, they could recover no personal judgment against plaintiff in error, who both indorsed and guaranteed the payment of the obligations. But in indorsing the notes plaintiff in error waived demand, protest, and notice, and, in addition thereto, guaranteed the payment of the note "at maturity." In the first event he waived his right to require defendants in error to use the diligence required in ordinary cases in order to hold an indorser, and in the other event, by guaranteeing payment, he was relegated to the position of maker, and could not complain of lack of diligence. We overrule the fourth proposition.

[6] Plaintiff in error's fifth proposition of law is that—

"The plaintiffs could not introduce the notes and assignment sued on and recover judgment and have lien foreclosed without first tendering to A. W. Cunningham the amount paid by him to the sheriff of Cameron county when he purchased the land secured by said notes under the foreclosure of Freemont Investment Company."

[7] The proposition, according to plaintiff in error's brief, is predicated upon his third assignment of error, and an examination of that assignment discloses that no such objection is therein raised against the admission of said evidence, and hence there is no basis for that proposition, which must therefore be overruled. Moreover, the evidence objected to was admissible against the ground set forth in the proposition. The notes sued on constitute the very basis of the suit, and were admissible under both the pleadings and the evidence, with or without reference to the question of tender, which could not affect its admissibility. For like reasons plaintiff in error's sixth and seventh propositions of law are overruled.

[8] In his eighth proposition plaintiff in error attacks the admissibility and sufficiency of the evidence offered by defendant in error Williams to show his right to recover of plaintiff in error the amount he paid the latter's vendee for the east 40 acres of the land involved, and for the value of improvements and amount of taxes and water charges paid by him. As has been shown, while this suit was pending, plaintiff in error sold the east 40 acres to Green, and warranted the latter against the notes and lien held by defendant in error Patton, who held note No. 1, and Buel and associates, who held notes 4 and 5, as well as against taxes and water charges. The language of the warranty or guaranty was as follows:

"This deed is executed with the agreement that grantor will hold grantee harmless from any sums of money due on three outstanding notes of $555, each now in suit, and from all taxes, flat rates, and water charges of the canal district up to December 31, 1921, none of which debts or charges shall, as between grantor and grantee, be a charge against the 40 acres herein conveyed."

A few months later, and while this suit was still pending, Green in turn sold said east 40 acres to J. H. Williams, and in the conveyance thereof the recited consideration was $2,500 cash, "and the further consideration of the assumption and agreement made and entered into by and between A. W. Cunningham and I. E. Green, bearing date of May 31, A. D. 1922." Williams contends here, and recovered below upon that contention, that plaintiff in error's covenant to Green ran with the land, and inured to the latter's vendee, notwithstanding Green's conveyance was by special warranty deed, and not by the general warranty. Plaintiff in error resists this contention, asserting that his warranty or guaranty to Green was personal to the latter, and did not go with the land or inure to Williams, Green's vendee.

We are of the opinion that the limitation of the Green to Williams conveyance to a special warranty had no effect upon the question presented, and that the agreement of plaintiff in error, contained in his deed to Green, to hold the latter harmless against the notes sued on, and against taxes and water charges, must be construed without reference to that special warranty. And we are of the further opinion that plaintiff in error's warranty against the notes, taxes, and water charges is of such nature as to constitute it a covenant running with the land, which inured to the benefit of his vendee's vendee, and that, in a suit such as this, in which the lien to secure the notes covered by the warranty is foreclosed, defendant in error Williams, as a subsequent purchaser, is entitled to judgment against the warrantor for the amount paid plaintiff in error for the land, and for improvements, taxes, and water charges, in accordance with plaintiff in error's warranty. We overrule plaintiff in error's eighth proposition.

[9] We overrule plaintiff in error's ninth assignment, in which complaint is made of the exclusion of certain testimony offered by plaintiff in error upon the trial. If admitted, the testimony could not have affected any controverted issue in the case.

[10] In his tenth proposition plaintiff in error complains because the trial court included specific findings of fact and conclusions of law in the judgment. There is no merit in the complaint. There were no separate findings and conclusions filed by the trial judge, and none were requested, and the court set out in the body of the judgment certain findings and conclusions as a basis for the judgment. This is not objectionable; it was particularly appropriate in this case. The proposition will be overruled.

[11] In his eleventh and final proposition plaintiff in error insists that defendants in error should not have been permitted to introduce the notes and assignments sued on

without first showing that defendants in error were not parties to the suit brought by the Freemont Investment Company to foreclose the first lien. We overrule the proposition. The record sufficiently showed that defendants in error were not in fact parties to the prior suit.

The judgment is affirmed.