Argued September 20, affirmed October 18, 1927.

## THE MULTORPOR CO. v. LUCY MAE REED.

(260 Pac. 203.)

**Executors and Administrators — Administratrix of Estate cannot Carry on Business of Estate as Going Concern.**

1. Administratrix of estate has no authority to carry on business of estate as going concern.

**Executors and Administrators—Administratrix, Having Carried on Business of Estate Under Void Order, was Personally Liable for Debts Contracted.**

2. Having proceeded to carry on business of estate under void order, administratrix was personally liable for debts contracted in so doing.

**Abatement and Revival—Statute Allowing Plea of Nul Tiel Corporation to be Pleaded With Defense on Merits Applies to Condemnation Actions Only (Laws 1882, p. 53).**

3. Laws of 1882, page 53, amending statute in regard to condemnation actions so as to allow plea of *nul tiel* corporation to be pleaded at same time as defense on merits applies to condemnation actions only.

**Corporations—Defense of Nul Tiel Corporation cannot be Raised by Mere Denial, but must be Raised by Plea in Abatement.**

4. Defense of *nul tiel* corporation cannot be raised by mere denial, but defense must be set out by plea in abatement.

---

1. Power of executor to carry on business of estate, see note in 40 L. R. A. (N. S.) 205. See, also, 11 R. C. L. 135.
4. See 1 R. C. L. 692.

**Assignments—Complaint Need not Show That Assignors of Claims Sued on were Legally Organized Corporations.**

5. In action by plaintiff as assignee of claims of others, it is not necessary that complaint show that assignors were legally organized corporations.

**Parties — Where Plaintiff Corporation had Capacity to Sue, There was No Ground for General Demurrer.**

6. Where there was no want of capacity in plaintiff corporation to sue, there was no ground for general demurrer.

**Pleading—Special Demurrer is Unknown to Oregon Code.**

7. A special demurrer is a thing unknown to Oregon Code.

**Parties—Capacity of Assignor of Claim Sued on Should be Raised by Plea in Abatement.**

8. Capacity of assignor of claim sued on should be raised by plea in abatement and disposed of before hearing on merits.

---

Abatement and Revival, 1 **C. J.,** p. 116, **n.** 67, p. 119, n. 99, p. 256, n. 59, p. 259, n. 77.

Corporations, 14a **C. J.,** p. 839, n. 46, 56, 66.

Executors and Administrators, 24 **C. J.,** p. 55, n. 48, p. 56, n. 50, 51.

Pleading, 31 **Cyc.,** p. 169, n. 14, p. 171, n. 35.

From Clackamas: J. U. CAMPBELL, Judge.

Department 1.

This is an action brought by the plaintiff as assignee of the following named firms or associations, each alleged in the complaint to be corporations, to recover for goods, wares and merchandise alleged to have been sold and furnished to defendant.

The first cause of action was for a balance of $177.98 for goods purchased of The M. L. Kline Company. The allegation in regard to this purchase being duplicated in each of the other alleged causes, we give it in full.

"That heretofore and between the first day of September, 1921, and the thirty-first day of May, 1922, The M. L. Kline Company, a corporation, sold and delivered to said defendant at her special instance

---

8.  See 1 **R. C. L.** 52.

and request goods, wares and merchandise of the value of $416.54, which said sum said defendant promised and agreed to pay therefor.

"That prior to the commencement of this action said The M. L. Kline Company for a valuable consideration and for collection purposes, assigned, sold and transferred its said claim and demand against defendant unto plaintiff herein, and plaintiff is now the owner and holder thereof.

"That no payments have been made thereon, except payments in cash and return of merchandise in the sum of $238.56, leaving a balance due, owing and unpaid in the sum of $177.98, which said latter sum defendant neglects and refuses to pay, although often requested so to do."

Then follow similar allegations in regard to four other causes of action and assignments, to wit:

| | |
|---|---:|
| Laher Auto Spring Company | $ 14.98 |
| New York Lubricating Oil Company | 41.73 |
| Pacific States Electric Company | 39.33 |
| Goodyear Rubber Company | 200.44 |

The defendant's answer is a general denial couched in the following language:

"Comes now defendant Lucy Mae Reed, and for answer to the complaint of plaintiff filed herein denies each and every allegation, matter and thing set out and contained in said complaint, and the whole thereof."

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. O. D. Eby.*

For respondent there was a brief and oral argument by *Mr. H. S. McCutchan.*

McBRIDE, J.—A brief statement of the facts, which, in our opinion, are satisfactorily proved in

this case, and which will serve as a basis for our conclusions as to the law of the case, is as follows:

In Estacada there was a partnership firm consisting of the defendant's husband J. W. Reed and Earl Shibley doing business as Reed & Shibley. Some time prior to the institution of this action, Reed died and the defendant, his widow, was, by the consent of Shibley, appointed administratrix of the estate and purchased Shibley's interest in the partnership estate. Thereafter, she filed a petition in the County Court to the effect that it would be to the advantage of the estate and the creditors to carry on the business of the estate as a going concern and asked to be authorized to employ J. W. Denning, her son-in-law, at a salary of $100 a month to assist in the management of the business, and to be allowed to employ her son Russel G. Reed as a salesman at a salary of $75 to assist in the business. Pursuant to such petition, the County Court made the order requested permitting her to continue the business; also authorized her to employ Reed and Denning, and, in pursuance of said order, Denning, as manager of such business, ordered the goods and incurred the debts sued for herein notifying the sellers, in substance, that Mrs. Reed, as administratrix, was conducting the business under the name of Reed Auto Company. It may be said here that there was a voluntary nonsuit as to the second cause of action which is not here considered.

The able counsel for defendant made many technical and adroit objections to the admission of testimony advanced to establish the above facts and to discuss them in detail here would consume much needless space in the reports and be of no general

value. We are satisfied that the facts are as above stated.

1, 2. It is now thoroughly established in this state that the administratrix of an estate has no authority to carry on the business of the estate as a going concern. This point is finally settled in this state by the decision in the case of *In re S. Marks & Co.'s Estate,* 66 Or. 340 (133 Pac. 777). Having proceeded to so carry on the business under a void order, the administratrix is personally liable for debts contracted in so doing: 11 R. C. L., § 142; *Willis* v. *Sharp,* 113 N. Y. 586 (21 N. E. 705, 4 L. R. A. 493). See note in *Swaine* v. *Hemphill,* 40 L. R. A. (N. S.) 218.

3-5. This brings us to a very important and difficult question upon the solution of which this case must turn. The corporate capacity of plaintiff, as assignee of these claims, is admitted, but there is no evidence as to whether the various assignors are natural persons, partnerships or corporations. Defendant urges with great plausibility the view that it is not only necessary that a plaintiff claiming to be a corporation should allege and prove its corporate existence, but that it should also allege and prove the corporate or other entity of each of its assignors when it sues in the capacity of an assignee.

It is to be borne in mind that this is not the usual case of a question of the plaintiff's legal capacity to sue, because it is admitted that plaintiff is a local corporation. Having such capacity, neither is it questioned that the facts stated in regard to the claims assigned if true show that some entity, natural person, partnership or corporation has a cause of action against defendant. The contention here is that, because the complaint and evidence does not differen-

122 Or.—39

tiate between the various entities and make clear which entity it is claimed the defendant dealt with, plaintiff cannot recover in this action.

The early decisions of this court seem to be that, even as to a plaintiff, the plea of *nul tiel* corporation was a plea in abatement, and could not be enjoined with a plea to the merits: *Oregon Central R. R. Co.* v. *Wait,* 3 Or. 91; *Oregon Central R. R. Co.* v. *Scoggin,* 3 Or. 161; *Oregon Cascade R. R. Co.* v. *Baily,* 3 Or. 164. These were cases involving the exercise of eminent domain by railroad corporations and the inconvenience of such a rule, although well established in other jurisdictions, led the legislature of 1862 to so amend the statute in regard to condemnation actions as to allow a plea of *nul tiel* corporation to be plead at the same time as defense on the merits: Gen. Laws 1862, p. 53. Both the title to this act and the act itself show that this rule of pleading was intended to apply to condemnation actions only, leaving the general rule, as to the manner of pleading the defense of the nonexistence of a corporation, as it existed before, which, as we shall presently show, required such a defense to be set out by a plea in abatement. Subsequent to the passage of the above act, the case of *Bridal Veil Lumbering Co.* v. *Johnson,* 25 Or. 105 (34 Pac. 1026), came before this court. The plaintiff in that case brought a condemnation action alleging it was a corporation, and that certain land was necessary for its right of way and sought to condemn the same. The court held that under the act last quoted the denial of plaintiff's existence as a corporation was sufficient to put the plaintiff upon proof of is existence, but intimated that, but for the passage of said act, defendant would have been required to have plead in abatement. The case of

*Law Trust Society* v. *Hogue,* 37 Or. 544 (62 Pac. 380, 63 Pac. 690), was a suit to foreclose a mortgage against two defendants who answered separately. The complaint, in substance, alleged that the mortgage was executed to the Jarvis Conkling Mortgage Trust Company, a corporation organized and existing under the laws of Missouri, and was by that corporation assigned to the plaintiff, a corporation organized and existing under the laws of Great Britain. One of the defendants answered in abatement alleging, among other matters, that he had no knowledge or information sufficient to form a belief as to whether the first corporation "was or is" a corporation and made a like allegation as to the plaintiff. The other defendant answered alleging that he had no knowledge or information sufficient to form a belief as to the same matters. There being some question as to the proof offered as to the existence of these corporations, Mr. Justice MOORE in a very plausible opinion declared it insufficient and held that the plea in abatement of one defendant and the plea apparently in bar of the other were good, and held for a reversal of the case which had been decided in favor of plaintiff in the court below. But the opinion adds that, in the judgment of his associates, the pleas were formally insufficient and therefore directed a decree affirming the court below. It is a very unusual incident that the writer of the principal opinion and the only opinion at that stage of the case should appear as dissenting from the final judgment of the court. The case really decides nothing as to what is required in raising the issue of *nul tiel* corporation, though from its appearance in the reports as the opinion of the court, it has sometimes rushed hasty or careless readers of it into

the belief that it decided that a plea of *nul tiel* corporation may be raised by a mere denial.

In *Goodale Lumber Co.* v. *Shaw,* 41 Or. 544 (69 Pac. 546), it was held directly that the mere denial of plaintiff's existence as a corporation was sufficient to put plaintiff upon proof of its existence, but this was in an action brought by plaintiff as assignee of a note against parties who had had no dealings with it whatever. The authorities cited in that opinion are far from sustaining the text, but in *Hartford Ins. Co.* v. *Central R. R.,* 74 Or. 144 (144 Pac. 417), the decision of Mr. JUSTICE MOORE in *Goodale Lumber Company* v. *Shaw* was followed, and also in other decisions since then. So, while upon careful examination of the authorities, the writer is now convinced that they go too far and are contrary to the weight of authority in other jurisdictions, the rule is so well established here that it is not practicable to overturn it without creating such legal confusion as would work more harm than the remedy would do good although an examination of the authorities cited in notes 16 and 21 to Section 3238, 5 Thompson on Corporations (3 ed.), will disclose the fact that Oregon decisions are supported by a very small number of states. But the question here is not as to the plaintiff's legal capacity to sue because it is admitted that it has such capacity, but it is urged that it should also "show that its assignors were legally organized corporations." We cannot assent to such an extension of the doctrine announced. Doubtless, one of the principal reasons which would impel any court to require pleading and proof of the existence of a corporation plaintiff is in order that the defendant may be assured that he is litigating with an actual responsible entity which can be held

responsible in damages or costs in case of failure to make good the claim set forth in his complaint. A second reason is to protect the defendant from another action by some other party on the same demand. Another instance may arise where the gist of the action is the corporate entity and legal organization of the plaintiff, as, for instance, when an alleged corporation is suing for delinquent subscriptions to its capital stock where no liability can exist until there is a complete organization; but there is not one of these contingencies existent in the case at bar.

6–8. If the defendant did not buy the goods of the parties named, she can say so and put the plaintiff on the proof. If she did deal with the parties named as assignors and bought the goods of them, it is of no consequence to her whether they were individuals, corporations or partnerships. If they were such entities as could and did sell her goods, they are good enough entities to be paid for that which they furnished. If the complaint leaves a doubt as to what particular class of vendors defendant dealt with, a motion to make more definite and certain in that respect might be invoked, or if a doubt should exist in plaintiff's mind as to whether a judgment against her in these cases might still leave her liable to somebody else, a plea in abatement could have been interposed. There was no want of capacity in plaintiff to sue; therefore, there was no ground for a general demurrer and a special demurrer is a thing unknown to our Code. Considerations of public policy and convenience forbid trying out the capacity of an assignor under a general denial. Whether it be the issue of infancy, coverture, idiocy or what not, the matter should be raised by plea in abatement and disposed of before a hearing on the merits. Public con-

venience would also suggest the impropriety of requiring pleading and proof of corporate, or other capacity under the general issue.

It is not uncommon, and a saving of time and expense of litigation, for several and ofttimes many creditors to assign their claims to some person or corporation residing in the locality in order to save delay and expense of bringing suit and, perhaps, as in this case, many of the claims are small. We here note that one of the claims in this case is only $14. To procure certified copies of the articles of incorporation and attested copies of the laws of New York, as a preliminary matter here, would have probably cost an amount greater than the claim assigned, and, if the defendant had lost her case, as she has, these costs as to each assignor would have been taxed against her as part of the expense of the trial. In this case there were six claims, but there are cases on record where the separate claims will sum up to several times that number. Now, if in such cases, the defendant wishes to raise the issue that a particular assignor was an infant, or a lunatic, or otherwise disqualified from assigning, common sense would seem to dictate that the reason for such disqualification should be pleaded specially in abatement rather than by general denial, so that the plaintiff could prepare to meet it.

The authorities precisely in point on this question are not numerous and the diverse statutes of the different jurisdictions render such as we have examined of doubtful value. *Herbst Importing Co.* v. *Hogan*, 16 Mont. 384 (41 Pac. 135), seems to hold with defendant's contention, but the Montana statute is different from ours. *Strong* v. *Moore*, 75 Kan. 437 (89 Pac. 895), seems to sustain plaintiff's contention.

*Kennedy* v. *Cotton,* 28 Barb. (N. Y.) 59, also holds with plaintiff though the reasons given do not seem entirely applicable under our practice: *Crinnian* v. *Knauth,* 29 Misc. Rep. 523 (61 N. Y. Supp. 976), which was rendered after the New York practice had assimilated more. closely to our own, seems in point for plaintiff. The court gives common-sense reasons for its opinion which do not refer to any provision of the New York Code .not common to our own. This opinion is affirmed by memorandum in 48 App. Div. 633 (63 N. Y. Supp. 1106), and we are inclined to adopt it.

We have given more space to this subject than the amount involved might seem to warrant, not only on account of the great zeal and ability with which it has been presented, but because it comes as a comparatively new question here upon which it seems proper, in the first instance, for the court· to make its position so clear that no doubt may hereafter arise. Upon the other questions presented, we hold with the plaintiff.

The judgment is affirmed.     AFFIRMED.

RAND, C. J.. and COSHOW and BELT, JJ., concur.