## McLEAN v. MORROW.

### No. 3556.

Court of Civil Appeals of Texas. Beaumont.
Jan. 31, 1940.

Rehearing Denied Feb. 7, 1940.

E. E. Easterling and W. D. Gordon, both of Beaumont, for appellant.

John H. Land, Chas. F. Heidrick, and Orgain, Carroll & Bell, all of Beaumont, for appellee.

WALKER, Chief Justice.

This suit was instituted in the district court of Jefferson County by W. M. Morrow, receiver of Lumbermen's Reciprocal Association, praying for judgment against appellant, Marrs McLean, for $1,652.60, with interest, on allegations that appellant was due that amount under an assessment made against him as a policyholder in Lumbermen's Reciprocal Association, by one of the district courts of Travis County. Pendente lite, the receiver executed to appellee C. P. Bordages, on the recited consideration "of the premises and the sum of Ten Dollars and other good and valuable considerations to me in hand paid by C. P. Bordages," a written assignment of his claim against appellant McLean, authorizing him "in his own name and right and at his own cost, to prosecute said suit to judgment, to collect and receive, or to sell, transfer, settle and discharge the said account, debt, suit and cause of action aforesaid." In the written contract of assignment, the receiver made the following description of his claim against Marrs McLean: "That certain account and debt due and owing to the undersigned as Receiver aforesaid by Marrs McLean of Beaumont, Jefferson County, Texas, in the sum of $1,652.60, plus interest thereon at six per cent from May 1, 1933, being the amount of the assessment levied in cause No. 51,-867 styled Wright Morrow, Receiver for Lumbermen's Reciprocal Association, v. Trinity Portland Cement Company, et al., in the 126th Judicial District Court of Texas, together with the cause of action and suit on said account filed on behalf of the undersigned by John H. Land, Attorney of Beaumont, Texas, in the District Court of Jefferson County, Texas, and being cause No. *48003* now pending on the docket of said court, together with the court costs deposited in said suit."

It was recited further in the written contract of assignment: "It is understood and agreed, however, that this transfer and assignment is made subject to the agreement of the undersigned as Receiver heretofore made with the said John H. Land, Attorney, to pay the said attorney one-half of any amount collected on said account and debt or in said suit."

After receiving the assignment from the receiver, appellee, with permission of the court, filed an amended pleading, whereby he was substituted as plaintiff, and in his own name prosecuted the suit to judgment. Appellant answered only by general demurrer, general denial, and by pleas of the two and four years' statutes of limitations. Vernon's Ann.Civ.St. arts. 5526, 5527. On trial to the court without a jury, judgment was in favor of appellee against appellant for the relief prayed for, from which appellant has duly prosecuted his appeal to this court. We shall discuss only the proposition that appellee was without title to the cause of action.

■ The assignment was executed by the receiver without authority from the court which appointed him receiver, and without authority from any other court. The order appointing him authorized him only to collect and adjust the claim, and in no way to sell and assign it. On this statement, the written assignment by the receiver to appellee was void and vested him with no justiciable interest in the claim asserted by the receiver against appellant. 53 C.J.—Receivers, Secs. 175, 315, 316, 321. As we understand appellee's brief, he concedes this point; we quote from his counter proposition: "Wright Morrow, Receiver, acting under direction of the court which appointed him and deriving from said court all of his power and authority, could not divest himself of title to a debt, claim or chose in action by an act of transfer or assignment done without direction or order of the court."

But in support of his judgment, appellee advances the following counter propositions:

■ (1) It is insisted that appellant's general demurrer and general denial did not put in issue the alleged assignment of the claim by the receiver to appellee. On the issue of the execution and delivery of the written assignment, appellee advances a sound legal proposition. 5 Tex.Jur. 53; McCormick v. Rainey, 101 Tex. 320, 107 S.W. 45. But the proposition does not control the facts of this case. Appellant does not controvert the due execution and delivery of the written assignment plead by appellee and offered by him in evidence; his proposition simply invokes a legal construction of the written contract of assignment. His contention is that the assignment did not vest appellee with title

to the cause of action originally asserted against him by the receiver, and that contention must be sustained. Aulanier v. Governor, 1 Tex. 653, does not hold contrary to this conclusion; it was there said: "It is, however, a well settled rule, that when a good cause of action is shown, and exception only to the person of the plaintiff, it can only be sustained by a plea showing who is the person really entitled to be plaintiff."

The amended petition disclosed all the facts of the cause of action; the basis of its assertion by the receiver against appellant and the nature of appellee's claim; that, on the facts alleged, appellee had no justiciable right in the cause of action; and that the receiver, and not appellee, was "the person really entitled to be plaintiff." A plea by appellant, denying appellee's right to prosecute the suit, and naming the "person entitled to be plaintiff," would not have given any fact not disclosed on the face of appellee's amended pleading.

■ (2) By his amended petition, appellee insists that he made his appearance only as "a" plaintiff, and not as "the sole" plaintiff. The facts deny that contention. We give the following quotation from his amended petition:

"Now comes C. P. Bordages, a resident of Jefferson County, Texas and suggests to the Court that since the institution of this suit he has become the successor in interest to Wright Morrow, Receiver and Trustee of the Lumbermen's Reciprocal Association, Plaintiff in the above style and numbered cause, to and in the chose of action made the basis of this suit against Marrs McLean, hereinafter referred to as the defendant and/or subscriber and for cause of action respectfully shows the Court the following:

"I. That the said C. P. Bordages did on the 16th day of July, 1937, for a valuable consideration, purchase of and from Wright Morrow, the duly appointed, qualified and acting Receiver and Trustee of the Lumbermen's Reciprocal Association, a reciprocal insurance association created under and by virtue of Chapter 20 of Title 78 of the Revised Civil Statutes for 1925, all of his right, title and interest as such Receiver and Trustee in and to the account, claim, debt and chose in action of the said Lumbermen's Reciprocal Association against the said Marrs McLean, as evidenced by an instrument in writing dat-

ed the 16th day of July, A.D., 1937, being the identical and same claim, account, debt and chose in action sued upon the instant case and the said C. P. Bordages being now the legal owner and holder thereof, begs leave of the Court to be substituted as party plaintiff to this suit and now by leave of Court having become a party plaintiff to this suit adopts the pleadings of the original plaintiff as filed in this cause and leave of Court first having been had and obtained, files this his First Amendment to the Original Petition as filed herein, alleging as follows:

"II. That Wright Morrow was appointed Receiver and Trustee of the Lumbermen's Reciprocal Association in suit No. 48596, entitled The State of Texas, et al. v. Lumbermen's Reciprocal Association, filed in the 98 District Court of Travis County, Texas, by an order of said Court dated July 31st, 1930 and by virtue of the said appointment and qualification and the further orders of said Court, the said Wright Morrow, Receiver and Trustee of the Lumbermen's Reciprocal Association, became entitled to bring and maintain this suit and to collect the assessments owing to said Lumbermen's Reciprocal Association.

"Defendant is an individual, operating under the name of Marrs McLean, who was, at the time of the institution of this suit and prior thereto, a resident of Beaumont, Jefferson County, Texas, where service of process was had."

His prayer was: "Wherefore, premises considered, C. P. Bordages prays that the defendant having been cited in terms of law to appear and answer herein, that upon a trial hereof he have judgment against the defendant for said sum of $1,652.60, together with interest thereon from May 1, 1933, at 6% per annum, and for all costs of court, and for such other and further relief, special and general, at law and in equity, as to which he may show himself entitled."

Appellee Bordages filed his amended petition under authority of the following docket order by the trial court:

"10 27 38 C. P. Bordages substituted as party plaintiff and has leave to amend.
"R. L. Murray Judge."

After appellee filed his amended petition, the receiver made no further appearance in the case; no judgment was entered for or against him; the issues were tried be-

tween appellee, as the sole plaintiff, and appellant. While there is no order in the record dismissing the receiver from the case, the effect of the orders made by the court, on his docket and as recited by appellee in his amended pleading and in the judgment, was to dismiss him by implication. The clear intent of the assignment by the receiver to appellee was that appellee should be the sole plaintiff in the amended pleading.

■ (3) Appellee contends that "his place in the proceedings was as *substitute* for Wright Morrow, Receiver, and going to Vol. 3 of Bouvier's Law Dictionary, Rawle's Third Revision, we find that a 'substitute' is 'One placed under another to transact business for him.'" This contention must be overruled. Appellee was "substituted" as sole plaintiff, and not simply to prosecute the suit in his name for the benefit of the receiver. As stated above, on the filing of the amended petition, the receiver was dropped from the litigation, and after the filing of the amended pleading, no longer asserted any interest in the cause of action.

(4) We quote the following argument from appellee's brief: "The Appellant does not even contend that the whole beneficial interest in this cause of action was assigned, therefore it goes without saying that there could be no complete elimination of Wright Morrow from the suit 'without an actual transfer or devolution of his interest.'"

Appellant's point is that the contract of assignment was absolutely void, but holding the assignment, appellee had himself "substituted" as sole plaintiff, thereby dismissing the receiver as a party plaintiff. We sustain that contention.

■ (5) As sound law, we concede appellee's proposition that the assignment of the claim by the receiver did not divest him of the right to remain in the suit. Williamson v. Pulliam, Tex.Civ.App., 89 S. W.2d 799. It is also the law that appellee, claiming under the written assignment, had the right to have the cause prosecuted to judgment in the name of the receiver, and that the assignment alone did not ipso facto displace the receiver as plaintiff. Duke v. Trabue, Tex.Civ.App., 180 S.W. 910. Under the facts of a particular case it may happen that the original plaintiff should be retained in the suit. Ford v. Oliphant, Tex.Civ.App., 32 S.W. 437;

Hearne v. Erhard, 33 Tex. 60, 67. But these authorities, cited by appellee, do not support his judgment. The simple fact is that the receiver did not remain in the suit. He was dismissed without exception by him, and at the request of appellee. Since the receiver was dropped from the litigation at the request of appellee, appellee cannot now complain.

■ (6) Appellee's last contention is that the receiver, by the void assignment, did not "prejudice the rights of the receivership to recover or collect a debt of the receivership." In the event it should be held that appellee has no justiciable interest in the cause of action, under this proposition he prays that we reform the judgment of the lower court and enter judgment in favor of the receiver against appellant. Answering this contention it is sufficient to say that the receiver was not a party to this suit when it was tried, nor is he a party to this appeal. He has made no appearance, in person or by attorney, and has no prayer for any character of relief. Since appellee has no justiciable interest in the cause of action, we could not, even if the receiver was still a party to the record, enter judgment in his name for appellee's benefit. If the receiver were a party to the record, the judgment would be interlocutory, and would not support the appeal. It is immaterial on this point that the contract of assignment was void; appellee accepted it and had the court make the order substituting him as sole plaintiff.

From what we have said, it follows that the judgment of the lower court must be reversed and judgment here rendered in favor of appellant.

Reversed and rendered.

## On Rehearing.

On his motion for rehearing, appellee "questions the correctness of the opinion in this case on the ground that a mere general denial was not sufficient to raise any issue as to the validity of the assignment." In support of his proposition, he cites the following statement from 4 Am. Jur. 331: "Likewise, in an action by the assignee the capacity of an assignor cannot be tried under a general denial but must be raised by a plea in abatement before the hearing on the merits."

The text cites Multorpor Co. v. Reed, 122 Or. 605, 260 P. 203, 205, 55 A.L.R. 504, where the court said: "There was no want of capacity in plaintiff to sue." Appellee's "capacity" to sue was not in issue in the case at bar; the point decided by the original opinion was that he failed by his evidence to maintain his title. We quote the following proposition from 4 Am.Jur. 331—part of the same paragraph cited by appellee: "A general denial will, however, under the practice in most states, put in issue all of the facts necessary to make out the plaintiff's alleged cause of action. Thus, a general denial puts the averment of assignment in issue, that being an essential element of the plaintiff's case."

Johnson v. Vickers, 139 Wis. 145, 120 N.W. 837, 838, 21 L.R.A.,N.S., 359, 131 Am.St.Rep. 1046, is cited in support of the text; in that case the court said: "It is urged that the question of assignment is not before the court because it is not put in issue by the pleadings. The complaint alleged the assignment of the contract sued upon. This was a necessary allegation because the plaintiffs depended on such assignment for their right to recover. The answer put this allegation in issue by a general denial. Since the plaintiffs relied upon the fact of assignment to prove any cause of action at all, the general denial put the averment of assignment in issue."

In our judgment, these authorities fully support our conclusion that, having plead an assignment, as against appellee's general denial the burden rested upon appellee to prove title under his assignment.

We note the following additional authorities cited by appellee in support of his proposition:

(a) 6 C.J.S., Assignments, § 138: "In order for defendant to rely on a defense, his pleadings must put in issue the fact or facts relied on. If the plea or answer does not raise the defense it is waived. Accordingly, a defect in plaintiff's title must be taken advantage of by a proper pleading and in proper time."

The text cites in support of this proposition Chalfont v. Johnston, 3 Yeates, Pa., 16. The following quotation from that authority illustrates the point made by the text:

"Mr. Hemphill for the defendant insisted, that the present suit could not be supported by the plaintiff as assignee, Caleb Johnston one of the executors of the obligee not having joined in the assign-

ment. It was the folly of Mrs. Goodwin to nominate him her executor, who was one of the executors of her obligor, and known by her to be such.

"Per Cur. The testatrix might not have known this fact, but at any rate, if this technical nicety was intended to be insisted on, it should have been pleaded in abatement, like the case of part owners not sued. [Rice v. Shute] 2 Bl. Wm. [695] 696; [Abbot v. Smith, 2 Bl. Wm.] 947. [Rice v. Shute] 5 Burr. [2611] 2613. [Mitchell v. Tarbutt] 5 Term Rep. [649] 651. Perhaps it would be difficult, if not impracticable, to have given the plaintiff a better writ. Caleb Johnston was not compellable to join in the assignment, nor could he be reasonably expected to join in a suit against himself. Under such circumstances, a bill would certainly be supportable in Chancery against the now defendant. Courts in this state adopt the rules of equity, which form a part of our law. We are not necessarily called on to say in the present instance, how far we should feel ourselves obliged to follow the practice of a Court of Chancery, to prevent injustice, if even a plea in abatement had been put in to the form of the assignment."

Thus, an examination of the authority relied upon by appellee demonstrates that it is not in point.

(b) Appellee cites Cunningham v. Buel, Tex.Civ.App., 287 S.W. 683, 685, where the court said: "The authority by which the substituted parties came into the case, the capacity in which they appeared, and their apparent right to recover, were fully shown in their first pleadings, and we are of the opinion that due and orderly procedure required the complaining party to raise his objection by verified pleadings, setting out the specific grounds of his objection and by prayer to abate the suit as to the substitute parties. Article 2010, R. S.1925. By failing to do so plaintiff in error waived his right to question the *capacity* of those parties." (Italics ours.)

This case is not in point; we have before us no point on the *capacity* of appellee to maintain the suit.

(c) Appellee also cites Lesh v. Meyer, 63 Kan. 524, 66 P. 245, 246, where the court said: "The execution of the written assignment of the several accounts to Meyer was admitted. Under this state of the pleading, the defense that Meyer was not the real party in interest, that the assignment was only *colorable,* and that he had no such beneficial interest as would entitle him to maintain the action, was new matter, and should have been pleaded, before evidence is admissible tending to prove such defense."

The case is not in point; the assignment in issue in that case, on its face, conveyed title. The court simply held that the issue that the assignment was only colorable should have been plead. In the case at bar, the assignment, with its supporting evidence, did not establish title.

Appellee's second point in his motion for rehearing is to the effect that under the evidence he established title to the cause of action in issue. On that point we take the following statement from his motion for rehearing:

"Appellee contends in his motion for rehearing that the findings made by the court in its opinion, page 2, as follows: 'The assignment was executed by the receiver without authority from the court which appointed him receiver, and without authority from any other court. The order appointing him authorized him only to collect and adjust the claim, and in no way to sell and assign it. On this statement the written assignment by the receiver to appellee was void and vested him with no justiciable interest in the claim asserted by the receiver against appellant.'—are wholly unsupported by the record in this case and contrary thereto. Out of fairness to the parties the court is respectfully urged to review the record and to correct such finding, and as shown hereinafter, the orders of the court in the receivership proceedings when taken in connection with the language in the assignment, were fully sufficient to transfer the cause of action to C. P. Bordages and to justify the judgment which was entered in his favor.

"The entire evidence on this point is as follows: First, there appears the order appointing Wright Morrow receiver, in which he is given authority 'to do and to perform all things necessary with reference to the affairs of the company pending the further orders of the court.' There is a further order in the record in the receivership proceedings wherein the court recites that the powers given Wright Morrow, Receiver, should be enlarged and extended, and, 'It is now therefore Ordered, Adjudged and Decreed that the said Wright Morrow, Receiver, and Trustee aforesaid, be

and he is hereby fully authorized to take possession, control and custody of all of the said property, assets and effects of the Lumbermen's Reciprocal Association, *and to do all and anything and enter into any and all agreements, as may be deemed by him necessary or advisable to preserve said property, assets and effects of the said Lumbermen's Reciprocal Association.'* Such order concludes, 'It is further Ordered, Adjudged and Decreed that said Receiver shall have leave to apply for such other and further orders of this court as may to him from time to time seem advisable or necessary in the administration of this estate.'

"Such orders gave the receiver a wide range of powers to do any and all things necessary in his discretion with reference to the assets of said corporation.

"As directly authorized by the order of the court, he had instituted this suit. Having made an assignment of the cause of action to Bordages, the said Bordages, with leave of the court, became plaintiff therein, and Marrs McLean, defendant below and here appellant, made no objection. Upon trial of the case the assignment was introduced in evidence. This assignment has been quoted in part by the court in its opinion. Out of fairness to the parties, certainly the full language thereof should have been set forth and particularly the following portion appearing in the Statement of Facts, pages 227-228:

" 'Now, therefore, I, Wright Morrow, as Receiver of said Lumbermen's Reciprocal Association *by virtue of the powers in me vested by law in such case made and provided,* for and in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and valuable consideration to me in hand paid by C. P. Bordages, the receipt of which are hereby acknowledged, *under and by virtue of the orders of said court, have bargained, sold, transferred and assigned,* and by these presents do bargain, sell, transfer and assign unto C. P. Bordages, of Jefferson County, Texas, his heirs and assigns forever, all the estate, title and interest of the Lumbermen's Reciprocal Association in and to the following described property, to-wit * * *'

"Thereafter follows a description of the cause of action asserted in this case, and such assignment is duly signed by Wright Morrow as receiver and bears the usual Notary certificate. The above sets forth in full the record on this point."

On his statement, appellee contends that he established title to the cause of action on the following grounds:

(1) Because the receiver recited in the assignment that it was executed "under and by virtue of the orders of said court." Appellee introduced in evidence the orders of the appointing court relied upon to establish his title. These orders show affirmatively that the receiver did not have the power to execute the assignment; on the contrary the court gave him leave "to apply for such order and further orders of this court as may to him from time to time seem advisable or necessary in the administration of this estate." Since, under the authorities cited in the original opinion, the receiver could not divest himself of title to the cause of action without authority from the court, and since, under the showing made by the record the court did not give him that authority, it conclusively appears that appellee did not acquire title to the cause of action by his assignment from the receiver.

 (2) But appellee contends that our conclusion "disregards the well recognized law in this state pertaining to the presumption of regularity of official acts and proceedings." Appellee cites in support of this proposition 17 Tex.Jur. 277; Stoker v. Stoker, Tex.Civ.App., 254 S.W. 398; Slaughter v. Cooper, 56 Tex.Civ.App. 169, 121 S.W. 173. The presumption invoked by appellee can be invoked only where the officer acts within the apparent scope of his authority; the presumption has no application where the officer is one with limited authority and can act only within the limits of his authority. So, where the evidence affirmatively shows that his limited authority did not extend to the act in issue, he could not act, and no presumption can be indulged to support his act. The receiver had no power from the appointing court "to sell"; it follows that there is no basis to presume the regularity of his sale.

 A third point of law is involved: we quote the last sentence of Sec. 199, 53 C.J. 159: "When the receiver's act is manifestly for the benefit of the estate, it will be presumed, until the contrary appears, to have been done with the consent of the court."

It cannot be said, on the record in this case, that it was manifestly for the benefit of the estate to assign the cause of action to appellee on the recited consideration "of the premises and the sum of $10.00 and other good and valid consideration." So, on that ground the presumption invoked by appellee cannot be indulged.

On the whole record, we cannot say affirmatively that the receiver did not have power to execute the assignment; we can only say that appellee did not establish title by the evidence introduced. For this reason, the motion for rehearing should be granted and the cause remanded for a new trial. On this conclusion, it is necessary that we discuss certain other points made by appellant in his brief.

On the 31st day of July, 1930, Wright Morrow was appointed receiver of the Lumbermen's Reciprocal Association, hereinafter referred to as Association. Appellant, Marrs McLean, became a member of the Association by written contract signed by him on the 8th day of July, 1927, which contained the following stipulation: "There shall be no joint funds, but a separate individual account shall be kept by our Attorney for us and for each subscriber. Our liability under this agreement shall be our pro rata proportion of the indemnity granted by subscribers at the Association including all expenses incurred, but shall not exceed one additional annual premium deposit provided for in indemnity contracts issued under this authority, which amount we hereby subscribe subject to call by the Advisory Committee."

Under the written contract of membership, appellant carried policies of insurance with the Association on which he paid the following premiums:

| "No of Policy | Date of Policy | Amount of Premium on said Policy Earned During Period above stated |
|---|---|---|
| WC-3091-B | 7-15-28 to 7-15-29 | $ 7.04 |
| WC-3091-9 | 7-15-29 to 7-15-30 | 436.68 |
| WC-3092-B | 7- 7-28 to 7- 7-29 | 94.77 |
| WC-3092-9 | 7- 7-29 to 7- 7-30 | 4349.86 |
| WC-3092-0 | 7- 7-30 to 7- 7-31 | 119.53" |

As a "class" suit, acting under orders of the appointing court for the purpose of fixing the assessment liability of all the policyholders—all of them had signed the same written contract of membership—the receiver instituted suit against the Trinity Portland Cement Company, a policyholder of the Association, and 27 other policyholders. Appellant was not named one of the defendants, was not served with notice of the pending suit, and did not know that it was pending until after the entry of the final order of the court in the "class" suit on the 1st day of May, 1933. By the final order, the court levied an assessment of 33% of the amount of the booked and earned premiums on all policies in force from the 1st day of July, 1929, to the 1st day of July, 1930, inclusive. The order was made by the 126th district court of Travis county, to which the "class" suit had been regularly transferred. The suit at bar was instituted by the receiver against appellant to recover the sum of $1,652.60, 33% of $5,007.88, the earned premiums carried by him with the Association. It was this cause of action the receiver purported to transfer to appellee.

Appellant presents the point that the judgment or order entered by the court in the "class" suit was not binding on him. The very point presented by appellant— that he was not bound by the order of assessment entered in the 126th district court of Travis county—was before the court in Southern Ornamental Iron Works v. Morrow, Tex.Civ.App., 101 S.W.2d 336, writ refused, and there decided against his contentions. So, under the order of assessment appellant was made liable to the receiver for the sum of $1,652.60.

Appellant presents the second point that his assessment liability on the policies issued to him from the 15th day of July, 1928, to the 7th day of July, 1931, inclusive, under the quoted sections of his membership contract set out above, was barred by limitation when this suit was filed on the 10th day of June, 1936. The contention is denied. Limitation did not begin to run in appellant's favor against his liability for assessment on his policies until the court entered the order of assessment on the 1st day of May, 1931, less than four years before the institution of this suit. Couch on Insurance, Vol. 7, page 5764, Sec. 668; Tardy's Smith on Receivers, 2d Ed., Vol. 2, p. 1495, Sec. 507; Shaw, Banking Commissioner, et al. v. Bush, Tex.Civ.App., 61 S.W.2d 526; Geyer v. Jones, Tex.Civ.App., 93 S.W.2d 1192, 1193.

The cause of action was based upon the written contract signed by appellant by which he became a member of the

Association, and, therefore, was within the statute of four years, and not the statute of limitation of two years.

Motion for rehearing granted, judgment of the lower court reversed and the cause remanded for a new trial.