Submitted on briefs March 29; modified April 18; rehearing denied May 23; motion to recall mandate denied June 27, 1933

IN RE STEEBY'S ESTATE
STEEBY ET AL. *v.* NORCOTT

(20 P. (2d) 1080)

*Ira W. Carl,* of Portland, for appellants.

*Richard Talboy, A. G. Fletcher,* and *James L. Conley,* all of Portland, for respondent.

BEAN, J. On December 2, 1930, Ernest D. Steeby died intestate, leaving as his only heirs his widow, Christine A. Steeby, objector and appellant, and a minor son, Chester A. Steeby. On December 4, the probate court appointed Mrs. Steeby administratrix of the estate, and on December 11, pursuant to a petition from Mrs. Steeby, the court appointed Katherine Norcott, her sister, as administratrix. The assets of the estate consisted, among other things, of an automobile now in the possession of Mrs. Steeby, lot 8, block 32,

Belle Crest, Portland, Oregon, and thirty-five shares of stock in the Finn. Chemical Company. On January 9, 1931, Russell W. Sewall was appointed guardian of the person and estate of Chester A. Steeby, a minor, and has since continued to act as such. On September 22, 1931, Mrs. Steeby, incompetent, procured the appointment of her father, William Storie, as her guardian. On November 25, 1931, Mrs. Steeby, with the approval of her guardian, and Russell W. Sewall, as guardian of the minor heir, entered into a stipulation to the following effect:

"It is hereby stipulated and agreed by and between Christine A. Steeby, widow of Ernest D. Steeby, Deceased, Party of the First Part, and Russell W. Sewall, Guardian of the Estate and person of Chester A. Steeby, a minor, Party of the Second Part, Witnesseth:"

After reciting that the claims against the estate had been allowed in the sum of $1,700; that the widow obtained an order setting aside the homestead of the deceased as her separate property; that Chester A. Steeby was a son of the deceased by a former marriage, an heir of said deceased and beneficially interested in the estate; that it was advisable to enter into an agreement disposing of all of the assets of the estate for the purpose of distribution and that the parties had agreed upon a settlement, the stipulation proceeds:

"Now, Therefore, in consideration of the sum of One ($1.00) Dollar, by each of the parties hereto in hand paid to the other, receipt of which is hereby acknowledged, it is hereby stipulated and agreed as follows: Second party agrees that upon delivery to Second Party of a Second Mortgage, second only to one first mortgage not to exceed $1000.00, in the principal sum of Nine Hundred ($900.00) Dollars, on Lot Eight (8), Block Thirty-two (32), Belle Court, Portland, Multnomah County, Oregon, payable $15.00 a

month and interest, and the sum of One Hundred ($100.00) Dollars, in cash to release any and all claim or claims which the Second Party or said Chester A. Steeby has, or claims to have, against the Estate of Ernest D. Steeby, Deceased, and the First Party in consideration of the release of the said remainder of said estate does hereby release and confirm to the Party of the Second Part said Second Mortgage and said sum of $100.00 out of said estate.

"It is further understood and agreed that Lot Eleven (11), Block Eighteen (18), Sunnyside within the corporate limits of the City of Portland, Multnomah County, Oregon; the contract for the sale of the capital stock of Finn Chemical Company, an Oregon Corporation upon which there is a balance due of approximately $1,600.00; the Nash automobile owned by said estate be immediately conveyed, transferred and set over to the First Party herein as her separate property free and clear of any claim or claims on the part of said Chester D. Steeby.

"It is further understood and agreed that any residue in said estate left or remaining after the disposition of the above described property be, and the same shall go and become the property of the Party of the First Part herein.

"It is further understood and agreed that in accepting the parcels of property hereinabove mentioned neither the First Party nor the Second Party waives any right to the objection of the final account of the Administratrix herein or to raise any objection to any of the matters and things in connection with the administration of said estate including compensation of said Administratrix and her counsel.

"In Witness Whereof, the Party of the First Part has hereunto set her hand and seal and the Party of the Second Part has by authority of an Order duly made and entered in this Court in the matter of the Guardianship of Chester A. Steeby, a minor, caused these presents to be executed under his hand and his seal affixed thereto all on the 25th day of November, 1931".

■ The first three objections by Mrs. Christine A. Steeby are that the administratrix was not authorized to incur the expenses or permit the deductions made by the Epton Mortgage Company listed in the final report, as follows: Street assessments, $85.22; taxes, $64.32; expenses of loan and insurance, $64.60; attorney fees in regard to loan, $18. As shown by the stipulation it was deemed expedient to obtain a loan of $1,000 to pay the claims against the estate and it was arranged that a mortgage upon lot 8, block 32, Belle Crest, Portland, Oregon, should be executed.

Ernest D. Steeby, in his lifetime, had executed a contract for the sale of said lot, which, at the date of the stipulation, was held by Mrs. Mabel Cathcart, and it was arranged that a deed should be executed to her in conformity to the contract to sell, and that she should execute a first mortgage upon the lot in favor of the mortgage company for $1,000 and a second mortgage to Russell W. Sewall, guardian of the person and estate of Chester A. Steeby, a minor, in the sum of $900. In obtaining the loan it was found to be impossible unless the street assessments, taxes, insurance and expenses of the loan were paid. Mrs. Cathcart was unable to pay all of these items and after considerable negotiations it was decided to add the balance of such amounts over and above what Mrs. Cathcart paid, making, with some accrued interest, the sum of $254.75, to the second mortgage. This was done without changing the stipulation and with an intent to carry out the spirit of the stipulation and, as shown by a letter of December 2, 1931, of Russell W. Sewall, the guardian, to Joseph K. Carson, Jr., the attorney for Mrs. Steeby at that time, that the administratrix should pay the liens out of the proceeds of the first mortgage and have added the amount to the second note and

mortgage in favor of the guardian of the minor, making the note, with some accrued interest, in the total amount of $1,154.75. The note was payable at the rate of $15 per month and interest. It was agreed on behalf of the minor that when the second mortgage and note should be paid so that the principal balance remaining is $115.66, the mortgagee should assign and transfer the second mortgage to Mrs. Steeby.

It appears that the usual expenses in obtaining the loan were incurred and the street assessments and taxes that should have been paid by Mrs. Cathcart were secured by the second mortgage; that Mrs. Cathcart was making the payments promptly and that the security was fairly good. The arrangement in regard to the loan in the stipulation for dividing the property seemed to be equitable and fair and the objections thereto should be overruled.

The fourth objection has been complied with by filing the corporate vouchers.

Mr. Steeby, at the time of his death, owned thirty-five shares of stock in the Finn Chemical Company, a corporation, all of the stock of the corporation that had been subscribed. On August 25, 1931, this stock was sold to J. B. Walker, by order of the court, on a contract providing that the purchaser pay $500 cash, with the balance payable in monthly instalments of $70, the estate to assume all the accrued indebtedness in excess of $900, which amount of indebtedness was assumed by the purchaser, J. B. Walker. At the time of the sale the administratrix was of the opinion that the outstanding accrued indebtedness in excess of $900 was about $43.34 in addition to the unpaid salary of D. N. Essex in the sum of $325. The objection is that the administratrix had no authority in law or otherwise for making these disbursements.

It will be seen from the stipulation that the estate agreed to pay all of the indebtedness in excess of $900 which was assumed by Mr. Walker. He was to pay the sum of $2,100 and assume the indebtedness of the company to the amount of $900, making a total of $3,000 for the stock of the chemical company. It will be noticed by reference to the stipulation that whatever indebtedness of the Finn Chemical Company there was over and above $900 should be paid by the estate. This would reduce the amount of cash to be received. If the stipulation is upheld, and there does not seem to be any effort upon the part of the objector to set the same aside, then this indebtedness must be paid by the estate and would, in effect, reduce the price of the stock of the chemical company.

The other objections of the appellant, objections 8 to 16, inclusive, are directed to the matter of the affairs of the Finn Chemical Company, a corporation, and the connection therewith of the administratrix. Upon decedent's death his estate succeeded to the title to thirty-five shares, all of the outstanding stock of the Finn Chemical Company, an Oregon corporation engaged in the manufacture of fruit extracts and toilet preparations.

On December 19, a few days after the appointment of the present administratrix, an order was entered by the probate court reciting that by reason of said ownership by deceased of all of the stock of said corporation, it was without any board of directors or officers and authorized the administratrix to endorse and transfer to Richard Talboy, as attorney for said Christine A. Steeby, and to Russell W. Sewall, as guardian for Chester A. Steeby, each a qualifying share of the capital stock of the Finn Chemical Com-

pany, who were elected directors, in order to carry on the business of the corporation, the administratrix being one of the directors.

Respondent contends that the business of the corporation was not conducted by the estate of Ernest A. Steeby, deceased. It was, however, managed by the administratrix and the other two directors. Under the authority of this order the administratrix and the other two directors employed D. N. Essex as manager of the corporation at the same salary he had been receiving while working for the company prior to the death of decedent. In this operation of the company expenses were incurred, to which the appellant has objected. In August, 1931, a purchaser was procured for all of the capital stock of the Finn Chemical Company and the probate court authorized the sale of said stock for the sum of $2,100, the purchaser to assume $900 of the outstanding claims against the company. Under this order the estate received $500 in cash for the stock and an agreement to pay $1,600 in monthly instalments. Both of the heirs consented to the operation of the business in the manner mentioned and the administratrix acted in good faith and exercised ordinary care and due diligence throughout the administration of the estate. Christine A. Steeby desired to keep the "factory" if possible. Mrs. Norcott testified that soon after the death of Mr. Steeby, at the request of Mrs. Steeby, she wired for D. N. Essex to come from Seattle to Portland, and the arrangement was afterward made for him to manage the business of the corporation. Mrs. Steeby had worked in the chemical company factory for about five years, but on account of poor health she was unable to attend to the business.

It appears that the objector, through her attorney and guardian, had full knowledge of every act consti-

tuting the alleged fault in connection with the Finn Chemical Company and she made no objections to such acts.

■ As a general rule an executor or administrator is not justified in placing the assets of the estate in trade, and the law charges him with all losses, thereby incurred, without allowing him the benefits of any profits that he may make. The persons beneficially interested in the estate may hold the representative liable for the amount of funds used, with interest, or take all the net profit made. 24 C. J. 55, § 474. Good discretion may require some latitude in closing out decedent's business, and this a probate court will duly consider. An executor or administrator may be justified in continuing the business so far as is necessary for the purpose of winding up the same and converting the assets into money or carrying out existing contracts of decedent under a proper order of the probate court. 24 C. J. 57, § 475; *Shea v. Graves,* 142 Or. 503 (19 P. (2d) 406); *Shafford v. Reed,* 119 Or. 90 (247 P. 324); *Re Estate of Bethel,* 111 Or. 178 (209 P. 311, 226 P. 427); *In re Ennis' Estate,* 96 Wash. 352 (165 P. 119, 120); 11 R. C. L. 135, § 142; *Multorpor Co. v. Reed,* 122 Or. 605 (260 P. 203, 55 A. L. R. 504). The consent of the persons interested in the decedent's estate to the action of the personal representative in continuing the decedent's business, as a rule, will relieve the executor or administrator from liability for losses resulting therefrom, although such personal representative did not inform the beneficiaries that the operations were not being conducted at a profit. 11 R. C. L. 142, § 149; *Shafford v. Reed,* supra; *In re Fehlmann's Estate,* 134 Or. 46 (292 P. 1027).

■ Assuming, without deciding, that the business of the Finn Chemical Company was carried on by the ad-

ministratrix and not by the corporation, as such, it does not appear that the administratrix delayed for an unreasonable length of time, about eight months, in making the sale of the stock. It does not appear that she could have sold the stock prior to that time.

■ The appellant complains in regard to the arrangement for the sale of the stock and yet no objection is made to the stipulation. The probate court stated:

"the court can take judicial cognizance of the matter, that business has declined since the fall of 1929, and was declining during the course of this administration. The fact that the business sold for less than the appraised value cannot be charged up to maladministration or the fault of the administratrix".

We think this statement is correct. The real objection of the appellant is in regard to the contract of sale which was made and approved by the probate court in the estate's assuming all of the indebtedness of the corporation over and above $900, and yet there is nothing to indicate but what this was sold to the best advantage possible. Everyone knows the difficulties that would be encountered in selling a business of that kind during the year 1931.

The testimony shows that the operation of the Finn Chemical Company was discussed with the objector often during the employment of Mr. Carson as her attorney. The evidence shows that the relationship of the administratrix to the Finn Chemical Company was that of director of the corporation. See 14A, C. J. 102, § 1869, 107, § 1872.

Section 11-708, Oregon Code 1930, provides:

"He [the administrator] shall not * * * suffer loss for the decrease in value or the destruction * * * [of property of the estate] without his

fault * * * and if any such property sell for less than its appraised value, he shall not be responsible for the loss, unless occasioned by his fault''.

The appraisement of the shares of stock of the Finn Chemical Company, at $4,000, for the purpose of fixing a bond of the administrator, is not very satisfactory evidence of the value of the property at the time. The testimony does not show definitely what loss was incurred by the corporation continuing the business during the time mentioned. We have no doubt, however, that under any conditions the value of the property would decrease during the eight months mentioned. The objections are to specific items, some of which are in the final report of the administratrix and many of them are not, but were items of expense of the corporation. The objections were properly overruled.

On January 29, 1932, the administratrix filed a report as a final account, showing the balance of cash on hand, last report, $226.20, total receipts—this report, $1,807.49, total receipts, $2,033.69, total disbursements $991.53, balance cash on hand, $1,042.16, and reported claims filed and allowed but unpaid, repair of car $11.45, note of Ernest B. Steeby, deceased, $100, and interest, account due Rose City Cemetery for grave lot, balance, $49.50, and reported the following accounts to be collected: Balance of rent Mrs. Elizabeth Sears, $5.50, balance to February from Walker on contract, $20.

Objection is made to the allowance of any administratrix fees or any attorney's fees. The administratrix is entitled to statutory fees. The court allowed the administratrix, as attorney's fees, the sum of $500. In a supplemental petition for the allowance of attorney's fees, in addition to the services of Richard Talboy for

necessary litigation, matters requiring advice of counsel and services performed by him as attorney for the administratrix and transacting the business of the estate, the claim is made for "Acting as officer, director and legal advisor of the Finn Chemical Company, and, in this capacity, performing various services for the company, including the transaction of all of the legal business of the company, drawing up reports for the company, assisting in the procuring of new quarters for the company upon the expiration of the lease held by the company on its old location, interviewing creditors of the company who were threatening legal action".

■ It is the position of the administratrix that she did not operate the business of the Finn Chemical Company as administratrix. We think that the services of Richard Talboy, the director, should be adjusted as such services as director for the company and not as an attorney for the administratrix. It appears that Mr. Talboy performed various services for the company for about eight months, which was included in the allowance of $500 as attorney's fees for the administratrix. Considering the amount of the receipts shown by the final report of the administratrix and the securing of the mortgage on the Belle Crest property and his appearing for the administratrix at the hearings of the contested claim of Christine A. Steeby against the estate and at the hearing of the objections to the final report, we think the sum of $325 would be a reasonable attorney's fee for such services, and this amount will be allowed and the decree of the probate court will be modified accordingly.

■ By the stipulation between Mrs. Steeby and the guardian of Chester A. Steeby, which is not questioned,

it is agreed that the guardian of the person and estate of Chester A. Steeby, a minor, should have a second mortgage in the principal sum of $900 with interest on the property mentioned, second only to one first mortgage not to exceed $1,000 on lot 8, block 32, Belle Crest, Portland, Multnomah county, Oregon. On account of some expenditures for street assessments and other items above mentioned and some accrued interest on the contract made by the estate, the second mortgage was taken in the sum of $1,154.75. It is claimed by Mrs. Steeby that all of the amount of the second mortgage over and above the sum of $900 and interest thereon should belong to her. We think it is equitable and just for Mrs. Steeby to have all of the second mortgage mentioned over and above the sum of $900 and interest belonging to Chester A. Steeby, the minor. This amount is apparently $254.75, together with interest from the date of the mortgage until paid. The mortgage is not found in the record. All of the second mortgage over and above $900, being about $254.75, with interest thereon from the date of the mortgage until paid, is hereby declared to be the property of Mrs. Steeby as a part of the residue of said estate.

Except as to the modification in regard to attorney's fees and the decree in regard to the balance of the second mortgage, the objections are overruled and the order and decree of the probate court is affirmed, as modified. Neither party will recover costs from the other in this court.